# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **CELLULAR COMMUNICATIONS** | § | |
| **EQUIPMENT LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| | § | |
| **ZTE CORPORATION,** | § | **CIVIL ACTION NO. 2:17-00079** |
| **ZTE USA INC.,** | § | |
| **ZTE SOLUTIONS, INC.,** | § | |
| **AT&T INC.,** | § | |
| **AT&T MOBILITY LLC,** | § | |
| **SPRINT CORPORATION,** | § | |
| **SPRINT SOLUTIONS, INC.,** | § | |
| **SPRINT SPECTRUM L.P.,** | § | |
| **BOOST MOBILE, LLC,** | § | |
| **T-MOBILE USA, INC., and** | § | |
| **T-MOBILE US, INC.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Cellular Communications Equipment LLC ("CCE") files this Complaint against ZTE Corporation; ZTE (USA) Inc.; ZTE Solutions, Inc.; AT&T Inc.; AT&T Mobility LLC; Sprint Corporation; Sprint Solutions, Inc.; Sprint Spectrum L.P.; Boost Mobile, LLC; T-Mobile USA, Inc.; and T-Mobile US, Inc. (collectively, the "Defendants") for infringement of U.S. Patent No. 8,570,957 ("the '957 patent"), U.S. Patent No. 8,867,472 ("the '472 patent"), and U.S. Patent No. 8,457,676 ("the '676 patent").

## THE PARTIES

1.      Cellular Communications Equipment LLC is a Texas limited liability company with its principal place of business in Plano, Texas.

2.      ZTE Corporation is a corporation organized and existing under the laws of the People's Republic of China with its principal place of business in ZTE Plaza, Keji Road South, Hi-Tech Industrial Park, Nanshan District, Shenzhen, Guangdong Province, P.R. China 518057. On information and belief, this Defendant may be served with process at its principal place of business at ZTE Plaza, Keji Road South, Hi-Tech Industrial Park, Nanshan District, Shenzhen, Guangdong Province, P.R. China 518057. This Defendant does business in the State of Texas and in the Eastern District of Texas.

3.      ZTE USA Inc. is a New Jersey corporation with its principal place of business in Richardson, Texas. This Defendant may be served with process through its agent, Jing Li, 2425 N Central Expy Suite 323, Richardson, TX 75080. This Defendant does business in the State of Texas and in the Eastern District of Texas.

4.      ZTE Solutions Inc. is a Delaware corporation with its principal place of business in Richardson, Texas. This Defendant may be served with process through its agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. This Defendant does business in the State of Texas and in the Eastern District of Texas.

5.      AT&T Inc. is a Delaware corporation with its principal place of business in Dallas, Texas. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

6.      AT&T Mobility LLC (with AT&T Inc., "AT&T") is a Delaware limited liability company with its principal place of business in Atlanta, Georgia. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

7.      Sprint Corporation is a Delaware corporation with its principal place of business in Overland Park, Kansas. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

8.      Sprint Solutions, Inc. is a Delaware corporation with its principal place of business in Reston, Virginia. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

9.      Sprint Spectrum L.P. is a Delaware limited partnership with its principal place of business in Overland Park, Kansas. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

10.     Boost Mobile, LLC (with Sprint Corporation, Sprint Solutions, Inc., and Sprint Spectrum L.P., "Sprint") is a Delaware limited liability company with its principal place of business in Irvine, California. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

11.     T-Mobile USA, Inc. is a Delaware corporation with a principal place of business in Bellevue, Washington. T-Mobile USA, Inc. maintains a significant presence in Richardson, Texas and offers products and services under the T-Mobile and MetroPCS brands. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218. This Defendant does business in the State of Texas and in the Eastern District of Texas.

12.     T-Mobile US, Inc. (with T-Mobile USA, Inc., "T-Mobile") is a Delaware corporation with its principal place of business in Bellevue, Washington. T-Mobile US, Inc. maintains a significant presence in Richardson, Texas, and offers products and services under the T-Mobile and MetroPCS brands. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant may be served with process through its agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

13.     This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 1367.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b). On information and belief, each Defendant is deemed to reside in this judicial district, have committed acts of infringement in this judicial district, have purposely transacted business in this judicial district, and/or have regular and established places of business in this judicial district.

16.     On information and belief, each Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to their substantial business in this State and judicial district, including: (A) at least part of their infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods sold and services provided to Texas residents.

17.     On information and belief, each Defendant has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this judicial district both proper and convenient for this action.

18.     Plaintiff CCE is a limited liability company located in Plano, Texas, in the Eastern District of Texas.  CCE is controlled by Acacia Research Group LLC, which maintains its principal place of business in Plano, Texas. CCE's business includes the acquisition and licensing of intellectual property.  Additionally, CCE's relevant documents are available in its offices in Plano, Texas.

## COUNT I

### (INFRINGEMENT OF U.S. PATENT NO. 8,570,957)

19.     CCE incorporates paragraphs 1 through 18 herein by reference.

20.     CCE is the assignee of the '957 patent, entitled "Extension of Power Headroom Reporting and Trigger Conditions," with ownership of all substantial rights in the '957 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.  A true and correct copy of the '957 patent is attached as Exhibit A.

21.     The '957 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.  The '957 patent issued from U.S. Patent Application No. 12/382,920 (the "'920 Application").

22.     Defendants ZTE, AT&T, Sprint, and T-Mobile have  and  continue  to  directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more  claims of the '957 patent in this judicial district and elsewhere in Texas and the United States, including at least claims 1-3 and 7-9, by, among other things,  making,  having  made, offering for sale, selling, importing, and/or using user equipment—including, for example: ZTE Avid 4G, ZTE AVID 828, ZTE Axon, ZTE Axon Pro, ZTE AXON 7, ZTE AXON 7 Mini, ZTE Blade V8 PRO, ZTE Citrine LTE, ZTE Grand Memo II LTE, ZTE Grand S Pro, ZTE Grand X 4, ZTE Imperial, ZTE Imperial II, ZTE Jetpack 4G LTE Mobile Hotspot 890L, ZTE Max Duo LTE, ZTE MF253, ZTE Midnight PRO LTE, ZTE Nubia 5S Mini LTE, ZTE Overture 2, ZTE Rapido LTE, ZTE 4G LTE Router with Voice, ZTE Source, ZTE Supreme, ZTE Unite, ZTE Unite II, ZTE Unite III, ZTE Warp Sync, and ZTE Zpad Tablet, sold or otherwise distributed by or through ZTE; the ZTE Fanfare 2, ZTE Grand X Max 2, ZTE Grand X Max Plus, ZTE Grand X3, ZTE AT&T Home Base, ZTE ZMAX 2, ZTE Mobley, ZTE Maven, ZTE Maven 2, ZTE Sonata 3, ZTE Trek 2, ZTE AT&T Velocity, ZTE Compel, ZTE Overture (Z995), ZTE Z998 GoPhone (ZTE Unico LTE), and ZTE ZMAX 2, sold or otherwise distributed by or through AT&T and/or ZTE (the "'957 AT&T Mobile Devices"); the ZTE Sprint LivePro, ZTE Max + (a.k.a. ZTE Max Plus), ZTE Pocket Wi-Fi, ZTE Prestige, ZTE Speed (a.k.a. ZTE N9130), ZTE Tempo, ZTE Warp 4G, ZTE Warp 7, ZTE Warp Elite, ZTE Sprint Flash, ZTE Sprint Force, ZTE Sprint Vital (N9810), and ZTE Warp Sync, sold or otherwise distributed by or through Sprint and/or ZTE (the "'957 Sprint Mobile Devices"); the ZTE Avid Plus, ZTE Avid TrioZTE Anthem 4G, ZTE Grand X Max Plus,

ZTE Obsidian, ZTE T-Mobile Sonic 2.0 Mobile Hotspot, ZTE Source (a.k.a. ZTE N9511), ZTE T-Mobile 4G LTE Hotspot Z915, ZTE Max, ZTE Zmax, and ZTE ZMAX Pro, sold or otherwise distributed by or through T-Mobile and/or ZTE (the "'957 T-Mobile Mobile Devices"). These devices are collectively referred to as the "Accused Devices."

23.    Defendants directly infringe the apparatus claims of the '957 patent by making, offering to sell, selling, and/or importing the Accused Devices. Defendants also directly infringe the '957 patent by making, using, selling, offering to sell, and/or importing the Accused Devices to practice the claimed methods. Defendants are thereby liable for direct infringement.

24.    Specifically, each of the Accused Devices monitors its power headroom and transmits the power headroom in a power headroom report, wherein the power headroom report supports both positive and negative values and the negative power headroom indicates the missing power in dB to fulfill transmission requirements as claimed in claims 1-3 and 7-9 of the '957 patent. *See, e.g.*, power headroom reporting implementations in 3GPP TS 36.321.

25.    Additionally, Defendants are liable for indirect infringement of the '957 patent because they induce and/or contribute to the direct infringement of the patent by their customers and other end users who use the Accused Devices to practice the claimed methods.

26.    At a minimum, Defendants have known of the '957 patent as of the filing of the First Amended Complaint in *Cellular Communications Equipment LLC v. AT&T Inc., et al.*, Case No.: 2:15-cv-576 (the "576 Action") filed in this District. Each Defendant is also, however, a 3rd Generation Partnership Project (or "3GPP") member organization, or is affiliated with a 3GPP member organization. 3GPP solicits identification of standard essential patents, and, through 3GPP, Defendants received actual notice of the declared essential patents at issue here. The '957 patent is one such patent, and Defendants have known of the '957 patent; the '920 Application;

and/or the fact that the '957 patent's disclosure would be the subject of patent protection at least as early as August 2010, when it was disclosed to 3GPP via the European Telecommunications Standards Institute ("ETSI," an organizational member of 3GPP).

27.     Despite having knowledge of the '957 patent, Defendants have specifically intended and continue to specifically intend for persons who acquire and use the Accused Devices, including Defendants' customers (e.g., mobile device users, etc.), to use such devices in a manner that infringes the '957 patent, including at least claims 1-3 and 7-9. This is evident when Defendants encourage and instruct customers and other end users in the use and operation of the Accused Devices via advertisements and instructional materials.

28.     In particular, despite having knowledge of the '957 patent, Defendants have provided, and continue to provide, instructional materials, such as user guides, owner manuals, and similar online resources (available for example, via http://www.zteusa.com/support_page, and other instructional materials and documentation provided or made available by Defendants to customers after purchase) that specifically teach the customers and other end users to use the Accused Devices in an infringing manner. By providing such instructions, Defendants know (and have known), or should know (and should have known), that their actions have, and continue to, actively induce infringement.

29.     Additionally, Defendants know, and have known, that the Accused Devices includes proprietary hardware components and software instructions that work in concert to perform specific, intended functions. Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '957 patent and are not staple articles of commerce suitable for substantial non-infringing use.

30.     Specifically, each of the Accused Devices contains at least a transceiver and a baseband processor implementing, in combination with software instructions, functionality that is specifically programmed and/or configured to determine and transmit a power headroom report with both positive and negative values of power headroom as claimed in the '957 patent. Upon information and belief, the Accused Devices contains discrete code that uniquely provides this functionality. The code, which is configured to control the baseband processor, transceiver, and other components for performing these functions, is a material part of the inventions of the '957 patent and there is no substantial non-infringing use for this combination of hardware and software components.

31.     ZTE and AT&T test, make, use, offer for sale, sell, and/or import the '957 AT&T Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, ZTE and AT&T are jointly, severally, or alternatively liable for infringements described in this Count.

32.     ZTE and Sprint test, make, use, offer for sale, sell, and/or import the '957 Sprint Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, ZTE and Sprint are jointly, severally, or alternatively liable for infringements described in this Count.

33.     ZTE and T-Mobile test, make, use, offer for sale, sell, and/or import the '957 T-Mobile Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, ZTE and T-Mobile are jointly, severally, or alternatively liable for infringements described in this Count.

34.     On information and belief, despite having knowledge of the '957 patent and knowledge that they are directly and/or indirectly infringing one or more claims of the '957 patent,

Defendants have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement; thus, Defendants' infringing activities relative to the '957 patent have been, and continue to be, willful, wanton, and deliberate in disregard of CCE's rights.

35.     CCE has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to CCE in an amount that adequately compensates CCE for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

<u>**COUNT II**</u>

(INFRINGEMENT OF U.S. PATENT NO. 8,867,472)

36.     CCE incorporates paragraphs 1 through 35 herein by reference.

37.     CCE is the assignee of the '472 patent, entitled "Signalling of Channel Information," with ownership of all substantial rights in the '472 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements. A true and correct copy of the '472 patent is attached as Exhibit B.

38.     The '472 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.  The '472 patent issued from U.S. Patent Application No. 13/637,222, which claims priority to PCT/EP2010/053919 (with U.S. Patent Application No. 13/637,222 the "'222 Application").

39.     Defendants ZTE, AT&T, Sprint, and T-Mobile have  and continue to  directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more  claims of the '472 patent in this judicial district and elsewhere in Texas and the United States, including at least claims 1, 10, 11, 14, 28, and 41, by, among other things, making, having made,  offering  for  sale,  selling,  importing,  and/or  using  user  equipment—including,  for

example: ZTE Avid 4G, ZTE AVID 828, ZTE Axon, ZTE Axon Pro, ZTE AXON 7, ZTE AXON

7 Mini, ZTE Blade V8 PRO, ZTE Citrine LTE, ZTE Grand Memo II LTE, ZTE Grand S Pro, ZTE

Grand X 4, ZTE Imperial, ZTE Imperial II, ZTE Jetpack 4G LTE Mobile Hotspot 890L, ZTE Max

Duo LTE, ZTE MF253, ZTE Midnight PRO LTE, ZTE Nubia 5S Mini LTE, ZTE Overture 2,

ZTE Rapido LTE, ZTE 4G LTE Router with Voice, ZTE Source, ZTE Supreme, ZTE Unite, ZTE

Unite II, ZTE Unite III, ZTE Warp Sync, and ZTE Zpad Tablet, sold or otherwise distributed by

or through ZTE; the ZTE Fanfare 2, ZTE Grand X Max 2, ZTE Grand X Max Plus, ZTE Grand

X3, ZTE AT&T Home Base, ZTE ZMAX 2, ZTE Mobley, ZTE Maven, ZTE Maven 2, ZTE

Sonata 3, ZTE Trek 2, ZTE AT&T Velocity, and ZTE ZMAX 2, sold or otherwise distributed by

or through AT&T and/or ZTE (the "'472 AT&T Mobile Devices"); the ZTE Sprint LivePro, ZTE

Max + (a.k.a. ZTE Max Plus), ZTE Pocket Wi-Fi, ZTE Prestige, ZTE Speed (a.k.a. ZTE N9130),

ZTE Tempo, ZTE Warp 4G, ZTE Warp 7, ZTE Warp Elite, and ZTE Warp Sync, sold or otherwise

distributed by or through Sprint and/or ZTE (the "'472 Sprint Mobile Devices"); the ZTE Avid

Plus, ZTE Avid TrioZTE Anthem 4G, ZTE Grand X Max Plus, ZTE Obsidian, ZTE T-Mobile

Sonic 2.0 Mobile Hotspot, ZTE Source (a.k.a. ZTE N9511), ZTE T-Mobile 4G LTE Hotspot Z915,

ZTE Zmax, and ZTE ZMAX Pro, sold or otherwise distributed by or through T-Mobile and/or

ZTE (the "'472 T-Mobile Mobile Devices"). These devices are collectively referred to as the

"Accused Devices."

  40. Defendants directly infringe the apparatus claims of the '472 patent by making,

offering to sell, selling, and/or importing the Accused Devices. Defendants also directly infringe

the '472 patent by making, using, selling, offering to sell, and/or importing the Accused Devices

to practice the claimed methods. Defendants are thereby liable for direct infringement.

41.     Specifically, each of the Accused Devices is configured to receive a request to provide aperiodic channel information, generate a report, and to transmit the report containing the aperiodic channel information as claimed in claims 1, 10, 11, 14, 28, and 41 of the '472 patent. *See, e.g.*, Aperiodic CSI Reporting implementation in 3GPP TS 36.213.

42.     Additionally, Defendants are liable for indirect infringement of the '472 patent because they induce and/or contribute to the direct infringement of the patent by their customers and other end users who use the Accused Devices to practice the claimed methods.

43.     At a minimum, Defendants have known of the '472 patent as of the filing of the First Amended Complaint in *Cellular Communications Equipment LLC v. AT&T Inc., et al.*, Case No.: 2:15-cv-576 (the "576 Action") filed in this District. Each Defendant is also, however, a 3rd Generation Partnership Project (or "3GPP") member organization, or is affiliated with a 3GPP member organization. 3GPP solicits identification of standard essential patents, and, through 3GPP, the Defendants received actual notice of the standard essential patents at issue here. The '472 patent is one such patent, and the Defendants have known of the '472 patent; the '222 Application; and/or the fact that the '472 patent's disclosure would be the subject of patent protection at least as early as at least as early as March 2013, when it was disclosed to 3GPP via the European Telecommunications Standards Institute ("ETSI," an organizational member of 3GPP).

44.     Despite having knowledge of the '472 patent, Defendants have specifically intended and continue to specifically intend for persons who acquire and use the Accused Devices, including Defendants' customers (e.g., mobile device users, etc.), to use such devices in a manner that infringes the '472 patent, including at least claims 1, 10, 11, 14, 28, and 41. This is

evident  when Defendants encourage and instruct customers and other end users in the use and operation of the Accused Devices via advertisements and instructional materials.

45.     In particular, despite having knowledge of the '472 patent, Defendants have provided, and continue to provide, instructional materials, such as user guides, owner manuals, and similar online resources (available for example, via http://www.zteusa.com/support_page, and other instructional materials and documentation provided or made available by Defendants to customers after purchase) that specifically teach the customers and other end users to use the Accused Devices in an infringing manner. By providing such instructions, Defendants know (and have known), or should know (and should have known), that their actions have, and continue to, actively induce infringement.

46.     Additionally, Defendants know, and have known, that the Accused Devices includes proprietary hardware components and software instructions that work in concert to perform specific, intended functions. Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '472 patent and are not staple articles of commerce suitable for substantial non-infringing use.

47.     Specifically, each of the Accused Devices contains at least a transceiver and a baseband processor implementing, in combination with software instructions, functionality that is specifically programmed and/or configured to receive a request for providing aperiodic channel information, determine and send the channel information for the selected downlink component carrier, as claimed in the '472 patent.  Upon information and belief, the Accused Devices contains discrete code that uniquely provides this functionality. The code, which is configured to control the baseband processor, transceiver, and other components for performing these functions, is a

material part of the inventions of the '472 patent and there is no substantial non-infringing use for this combination of hardware and software components.

48.     ZTE and AT&T test, make, use, offer for sale, sell, and/or import the '472 AT&T Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, ZTE and AT&T are jointly, severally, or alternatively liable for infringements described in this Count.

49.     ZTE and Sprint test, make, use, offer for sale, sell, and/or import the '472 Sprint Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, ZTE and Sprint are jointly, severally, or alternatively liable for infringements described in this Count.

50.     ZTE and T-Mobile test, make, use, offer for sale, sell, and/or import the '472 T-Mobile Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, ZTE and T-Mobile are jointly, severally, or alternatively liable for infringements described in this Count.

51.     On information and belief, despite having knowledge of the '472 patent and knowledge that they are directly and/or indirectly infringing one or more claims of the '472 patent, Defendants have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement; thus, Defendants' infringing activities relative to the '472 patent have been, and continue to be, willful, wanton, and deliberate in disregard of CCE's rights.

52.      CCE has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to CCE in an amount that adequately compensates CCE for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III

### (INFRINGEMENT OF U.S. PATENT NO. 8,457,676)

53.     CCE incorporates paragraphs 1 through 52 herein by reference.

54.     CCE is the assignee of the '676 patent, entitled "Power Headroom Reporting Method," with ownership of all substantial rights in the '676 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements. A true and correct copy of the '676 patent is attached as Exhibit C.

55.     The '676 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.  The '676 patent issued from U.S. Patent Application No. 12/665,427, which claims priority to PCT/FI2008/050384 (with U.S. Patent Application No. 13/637,222 the "'427 Application").

56.     Defendants ZTE, AT&T, Sprint, and T-Mobile have and continue to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '676 patent in this judicial district and elsewhere in Texas and the United States, including at least claims 1, 3, 19, and 21, by, among other things, making, having made, offering for sale, selling, importing, and/or using user equipment—including, for example: ZTE Avid 4G, ZTE AVID 828, ZTE Axon, ZTE Axon Pro, ZTE AXON 7, ZTE AXON 7 Mini, ZTE Blade V8 PRO, ZTE Citrine LTE, ZTE Grand Memo II LTE, ZTE Grand S Pro, ZTE Grand X 4, ZTE Imperial, ZTE Imperial II, ZTE Jetpack 4G LTE Mobile Hotspot 890L, ZTE Max Duo LTE, ZTE MF253, ZTE Midnight PRO LTE, ZTE Nubia 5S Mini LTE, ZTE Overture 2, ZTE Rapido LTE, ZTE 4G LTE Router with Voice, ZTE Source, ZTE Supreme, ZTE Unite, ZTE Unite II, ZTE Unite III, ZTE Warp Sync, and ZTE Zpad Tablet, sold or otherwise distributed by or through ZTE; the ZTE Fanfare 2, ZTE Grand X Max 2, ZTE Grand X Max Plus, ZTE Grand X3, ZTE AT&T Home

Base, ZTE ZMAX 2, ZTE Mobley, ZTE Maven, ZTE Maven 2, ZTE Sonata 3, ZTE Trek 2, ZTE AT&T Velocity, ZTE Compel, ZTE Overture (Z995), ZTE Z998 GoPhone (ZTE Unico LTE), and ZTE ZMAX 2, sold or otherwise distributed by or through AT&T and/or ZTE (the "'676 AT&T Mobile Devices"); the ZTE Sprint LivePro, ZTE Max + (a.k.a. ZTE Max Plus), ZTE Pocket Wi-Fi, ZTE Prestige, ZTE Speed (a.k.a. ZTE N9130), ZTE Tempo, ZTE Warp 4G, ZTE Warp 7, ZTE Warp Elite, ZTE Sprint Flash, ZTE Sprint Force, ZTE Sprint Vital (N9810), and ZTE Warp Sync, sold or otherwise distributed by or through Sprint and/or ZTE (the "'676 Sprint Mobile Devices"); the ZTE Avid Plus, ZTE Avid TrioZTE Anthem 4G, ZTE Grand X Max Plus, ZTE Obsidian, ZTE T-Mobile Sonic 2.0 Mobile Hotspot, ZTE Source (a.k.a. ZTE N9511), ZTE T-Mobile 4G LTE Hotspot Z915, ZTE Max, ZTE Zmax, and ZTE ZMAX Pro, sold or otherwise distributed by or through T-Mobile and/or ZTE (the "'676 T-Mobile Mobile Devices"). These devices are collectively referred to as the "Accused Devices."

57.     Defendants directly infringe the apparatus claims of the '676 patent by making, offering to sell, selling, and/or importing the Accused Devices. Defendants also directly infringe the '676 patent by making, using, selling, offering to sell, and/or importing the Accused Devices to practice the claimed methods. Defendants are thereby liable for direct infringement.

58.     Specifically, each of the Accused Devices transmits power headroom reports in accordance with the relevant prohibit and periodic power headroom report timers as claimed in claims 1, 3, 19, and 21 of the '676 patent. *See, e.g.*, power headroom reporting implementations in 3GPP TS 36.321.

59.     Additionally, Defendants are liable for indirect infringement of the '676 patent because they induce and/or contribute to the direct infringement of the patent by their customers and other end users who use the Accused Devices to practice the claimed methods.

60.     At a minimum, Defendants have known of the '676 patent as of the filing of the First Amended Complaint in *Cellular Communications Equipment LLC v. AT&T Inc., et al.*, Case No.: 2:15-cv-576 (the "576 Action") filed in this District. Each Defendant is also, however, a 3rd Generation Partnership Project (or "3GPP") member organization, or is affiliated with a 3GPP member organization. 3GPP solicits identification of standard essential patents, and, through 3GPP, Defendants received actual notice of the declared essential patents at issue here. The '676 patent is one such patent, and Defendants have known of the '676 patent; the '427 Application; and/or the fact that the '676 patent's disclosure would be the subject of patent protection at least as early as December 2012, when it was disclosed to 3GPP via the European Telecommunications Standards Institute ("ETSI," an organizational member of 3GPP).

61.     Despite having knowledge of the '676 patent, Defendants have specifically intended and continue to specifically intend for persons who acquire and use the Accused Devices, including Defendants' customers (e.g., mobile device users, etc.), to use such devices in a manner that infringes the '676 patent, including at least claims 1, 3, 19, and 21. This is evident when Defendants encourage and instruct customers and other end users in the use and operation of the Accused Devices via advertisements and instructional materials.

62.     In particular, despite having knowledge of the '676 patent, Defendants have provided, and continue to provide, instructional materials, such as user guides, owner manuals, and similar online resources (available for example, via http://www.zteusa.com/support_page, and other instructional materials and documentation provided or made available by Defendants to customers after purchase) that specifically teach the customers and other end users to use the Accused Devices in an infringing manner. By providing such instructions, Defendants know (and

have known), or should know (and should have known), that their actions have, and continue to, actively induce infringement.

63.     Additionally, Defendants know, and have known, that the Accused Devices includes proprietary hardware components and software instructions that work in concert to perform specific, intended functions. Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '676 patent and are not staple articles of commerce suitable for substantial non-infringing use.

64.     Specifically, each of the Accused Devices contains at least a transceiver and a baseband processor implementing, in combination with software instructions, functionality that is specifically programmed and/or configured to provide a power control headroom report in response to determining that asset of at least one triggering criterion is met, as claimed in the '676 patent. Upon information and belief, the Accused Devices includes discrete code that uniquely provides this functionality. The code, which is configured to control the baseband processor, transceiver, and other components for performing these functions, is a material part of the inventions of the '676 patent and there is no substantial non-infringing use for this combination of hardware and software components.

65.     ZTE and AT&T test, make, use, offer for sale, sell, and/or import the '676 AT&T Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, ZTE and AT&T are jointly, severally, or alternatively liable for infringements described in this Count.

66.     ZTE and Sprint test, make, use, offer for sale, sell, and/or import the '676 Sprint Mobile Devices described in this Count, pursuant to one or more contractual agreements between

them relating to, at least, the distribution and sale of such devices. Accordingly, ZTE and Sprint are jointly, severally, or alternatively liable for infringements described in this Count.

67.     ZTE and T-Mobile test, make, use, offer for sale, sell, and/or import the '676 T-Mobile Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, ZTE and T-Mobile are jointly, severally, or alternatively liable for infringements described in this Count.

68.     On information and belief, despite having knowledge of the '676 patent and knowledge that they are directly and/or indirectly infringing one or more claims of the '676 patent, Defendants have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement; thus, Defendants' infringing activities relative to the '676 patent have been, and continue to be, willful, wanton, and deliberate in disregard of CCE's rights.

69.     CCE has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to CCE in an amount that adequately compensates CCE for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **JOINDER OF PARTIES**

70.     CCE incorporates paragraphs 1 through 69 herein by reference.

71.     The alleged infringements set forth in Counts I through III arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the testing, making, using, offering for sale, selling, and/or importing of the ZTE devices and equipment made the subject of Counts I through III.

72.     Questions of fact common to all Defendants will arise in this action including, for example, infringement by, or through use of, ZTE devices and equipment.

73.     Thus, joinder of ZTE, AT&T, Sprint, and T-Mobile is proper in this litigation pursuant to 35 U.S.C. § 299(a).

## JURY DEMAND

CCE hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

CCE requests that the Court find in its favor and against Defendants, and that the Court grant CCE the following relief:

a.     Judgment that one or more claims of the '957, '472, and '676 patents have been infringed, either literally and/or under the doctrine of equivalents, by Defendants and/or by others whose infringements have been induced by Defendants and/or by others to whose infringements Defendants have contributed;

b.     Judgment that Defendants account for and pay to CCE all damages to and costs incurred by CCE because of Defendants' infringing activities and other conduct complained of herein;

c.     Judgment that Defendants account for and pay to CCE a reasonable, ongoing, post-judgment royalty because of Defendants' infringing activities and other conduct complained of herein;

d.     That Defendants' infringements relative to the '957, '472, and '676 patents be found willful from the time that Defendants became aware of the infringing nature of their products, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.     That CCE be granted pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein; and

f.     That CCE be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: April 7, 2017

Respectfully submitted,

/s/ *Jeffrey R. Bragalone*
Jeffrey R. Bragalone (lead attorney)
Texas Bar No. 02855775
Monte Bond
Texas Bar No. 02585625
Terry A. Saad
Texas Bar No. 24066015
Jonathan H. Rastegar
Texas Bar No. 24064043

**Bragalone Conroy PC**
2200 Ross Avenue
Suite 4500W
Dallas, TX 75201
Tel: (214) 785-6670
Fax: (214) 785-6680
jbragalone@bcpc-law.com
mbond@bcpc-law.com
tsaad@bcpc-law.com
jrastegar@bcpc-law.com

Edward R. Nelson, III
ed@nelbum.com
Texas Bar No. 00797142
Thomas C. Cecil
tom@nelbum.com
Texas Bar No. 24069489
NELSON BUMGARDNER, P.C.
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
Phone: (817) 377-9111
Fax: (817) 377-3485

Claire Abernathy Henry
claire@wsfirm.com
Texas Bar No. 24053063
Thomas John Ward, Jr.
jw@wsfirm.com
Texas Bar No. 00794818
Wesley Hill
wh@wsfirm.com
Texas Bar No. 24032294
Ward, Smith & Hill, PLLC
PO Box 1231

1507 Bill Owens Pkwy
Longview, Texas 75604
Phone: (903) 757-6400
Fax: (903) 757-2323

Attorneys for Plaintiff
**CELLULAR COMMUNICATIONS
EQUIPMENT LLC**